V. W. PERRY v. SHADRICK MORRIS and others.

If a number of Justice's judgments be docketed in the Superior Court, they will, under the C. C. P., be a lien upon the land of the defendant from the time, where they were docketed and will have a priority over a judgment obtained in Court by another person against the same defendant at a subsequent time, and though an execution be issued on the latter and the sheriff levies it on the land and advertises it for sale, yet, if before the sale executions are issued on a part of the justice's docketed judgments and are placed in the hands of the sheriff, the proceeds of the sale of the land must be first applied to the payment of all the justice's judgments.

The lien on the land of the defendant acquired by a docketed judgment shall not be lost in favor of a judgment subsequently docketed, unless the plaintiff in the latter take out execution and give the plaintiff in the former twenty days' notice before the day of sale by the sheriff, and the plaintiff so noticed fail to take out execution and put it into the sheriff's hands before the day of sale as is prescribed in the 19th rule of practice adopted by the Supreme Court at June Term, 1869.

The fact that a judgment docketed in one county is afterwards docketed in another, does not deprive it of the lien it had on the defendant's land in the first county.

At the Spring Term, 1870, of the Superior Court for the County of STOKES, before his Honor, *Judge Cloud,* the Sheriff of that County had in his hands four executions in favor of V. W. Perry against Shadrick Morris, and one in favor of S. Westmoreland, to the use of Mary Moore and others, against the same man, and he made a return in open Court, and prayed the advice of the Court as to what application he should make of the money he raised on the executions, upon the following statement of facts :

On the 27th day of Oct., 1869, V. W. Perry obtained eight judgments before a Justice of the Peace, and on the 29th day of the same month, had them docketed on the records of the Superior Court of Stokes County, and instructed the Clerk to issue executions on four of them, and to send transcripts of the remaining four to be docketed in the

Superior Court of Forsythe County.   At the Fall Term, 1869, of the Superior Court of Stokes County, which commenced on the 1st day of November, of that year, one S. Westmoreland suing to the use of Mary Moore and others, recovered judgment against the same man, Morris, and had it docketed as of the first day of the Term.   He then took out execution on the 8th day of December, 1869, and put it into the hands of the Sheriff on the 23rd day of the same month, who, in a day or two afterwards, levied it upon the land of the defendant, Morris, and advertised it for sale.

On the 1st day of January, 1870, executions were issued on four of the docketed judgments of V. W. Perry, and placed in the hands of the Sheriff who levied them upon the same land and advertised it for sale under them also.   Before the day of sale the Sheriff, at the request of Perry, applied to the Clerk of the Superior Court and requested him to issue executions on the other four docketed judgments, which he declined to do upon the ground that he had no power to do so after transcripts of them had been sent and docketed in the Superior Court of Forsythe County.   The Sheriff sold the lands of Morris under the executions in his hands, and received the money therefor, which is claimed both by Perry and Westmoreland.   Perry claims that his eight judgments should be first satisfied, and Westmoreland claimed that the money should be applied in satisfaction of his execution issued on the judgment obtained in Court, and which was first issued, and that at all events Perry could have priority only on his four executions that were taken out and put into the hands of the Sheriff.   Upon the return of the Sheriff stating the above mentioned facts, and upon the motion of Perry to have the money applied to the satisfaction of his eight judgments, service of a rule was accepted in open Court, by the counsel for the parties claiming the interest in Westmoreland's judgment, and they thereupon

insisted that they were entitled to priority of satisfaction out of the money in the Sheriff's hands.

His Honor, on consideration of the case, ordered the money to be first applied to the satisfaction of the eight docketed judgments of V. W. Perry, and the residue, if any, to be applied to the execution on the judgment in the name of Westmoreland, and from this order the parties interested in that judgment appealed.

No counsel for the defendants.

*Dillard & Gilmer* and *T. J. Wilson,* for the plaintiff.

DICK, J. The fund in controversy was derived from the sale of land under execution. The facts set out by the Sheriff in his return entitled him to ask the advice of the Court as to the distribution of the fund; and the instructions of his Honor were correct in law.

Previous to the adoption of the C. C. P. the rights of an execution creditor, when he was not guilty of laches, generally depended upon the *teste* of his execution. Under the C. C. P. a judgment creditor acquires a lien from the time when his judgment is docketed upon the real property of the debtor, situated in the County in which the judgment is docketed. C. C. P., sec. 254.

A docketed judgment is intended as a security for money, and has the force and effect of a mortgage after the time of redemption has passed. If land is sold under an execution founded upon a junior docketed judgment, it amounts substantially to a sale of an equity of redemption, and the land remains subject to the lien created by a prior docketed judgment.

To prevent collusion and fraud between a debtor and a creditor claiming such a lien, this Court under the provision of the C. C. P., sec. 394, adopted a rule which enables a

creditor claiming under a junior docketed judgment to force a sale, &c. Rule 19, 63 N. C. R. 669.

The plaintiff in this case claimed a lien under eight Justice's judgments which where docketed in the office of the Superior Court Clerk in Stokes County, on the 29th day of October, 1869, and thus " became judgments of the Superior Court in all respects." C. C. P. sec. 503.

The defendant claimed under a judgment obtained in the Superior Court of Stokes County, and which, in contemplation of law, was docketed on the 1st day of November, 1869, the first day of the term.

The plaintiff, therefore, had the prior lien and he could in no way be divested of it, except in the manner prescribed in said rule of Court. As the defendant in proceeding upon his execution did not give the notice required by said rule, the plaintiff was not deprived of his priority of lien. The fact that four of the plaintiff's judgments were also docketed in the County of Forsythe, did not interfere with the lien created by their being docketed in the County of Stokes, in which the land was sold.

There was no error in the ruling of his Honor, and the judgment must be affirmed.

PER CURIAM.                    Judgment affirmed.