OSCAR HOOKER v. NELSON NICHOLS et al.

*"Connor's Act"— Registration of Deeds — Priorities— "At Law," Meaning of.*

1. Under Chap. 147, Acts of 1885 ("Connor's Act") which provides that no conveyance of land shall be valid against innocent purchasers for a valuable consideration from the donor, bargainor or lessor, etc., a sheriff's deed for land duly registered takes precedence of a similar deed which though dated first and made in pursuance of a prior sale was registered later.

2. The expression "at law," as used in statutes, does not mean merely a legal tribunal, as distinguished from equitable jurisdiction, but, generally, our system of jurisprudence, whether legal or equitable.

This was a CIVIL ACTION, to try title to land, tried before *Bynum, J.* (who, by consent of parties, found the following facts, a jury trial being waived), at March Term, 1894, of PITT Superior Court :

(It is admitted that title was out of the State and in William Whitehead at the date of the respective sales hereinafter set out.)

"1. That A. J. Tucker, by virtue of certain executions against the said William Whitehead, which executions are

admitted to be regular in all things, on the first day of December, 1890, exposed to public sale at the court-house door in Greenville, the land in controversy—the sale admitted to be regular and after due notice as required by law. That at said sale the plaintiff, through I. A. Sugg, his agent, purchased the lands in controversy, including other lands, designated as Lot 37 in the schedule of said Whitehead's property, for the sum of $225. That on the day of sale the plaintiff paid to said Sheriff a sum of money more than sufficient to pay the purchase-money for said land; that some time in March, 1891, he executed to the said plaintiff a deed for the said Lot 37, dating the deed December 3, 1890, which said deed was registered on the _____ day of March, 1891.

"2. That on the first day of December, 1890, and immediately after the sale of Lot 37, the said Sheriff, by virtue of said execution, sold as Lot No. 38 a part of the land sold as Lot No. 37, which was bid off by the defendants. On the ninth day of December, 1890, the defendants paid said Sheriff the purchase money, to-wit, thirty-nine dollars, and the Sheriff executed a deed for the same on that day, which said deed was duly probated and registered on the 13th day of December, 1890; that Nelson Nichols bid off the land for the defendants.

"3. That after the purchase by Nelson Nichols he was informed by I. A. Sugg, agent of the plaintiff, that Lot No. 38 bid off by him was covered by Lot No. 37 as bid off by Hooker, and that he could not hold. That this conversation was had before the ninth of December; that Nelson Nichols paid the purchase-money, thirty-nine dollars, and the deed was executed to the defendant."

Upon the above facts, the Court intimated to the plaintiff that he could not recover, in deference to which intimation the plaintiff took a non-suit and appealed.

*Mr. J. E. Moore*, for plaintiff (appellant).
No counsel, *contra*.

FAIRCLOTH, C. J.:   The lappage of lots Nos. 37 and 38
in the schedule of William Whitehead is the land in con-
troversy, it being admitted that Whitehead's title was good,
who was the judgment debtor.   On December 1, 1890, the
Sheriff under executions against Whitehead, sold lot No.
37 and the plaintiff purchased, and immediately on the
same day he sold lot No. 38 and the defendant purchased;
each purchaser paid the amount of his bid and the sheriff
subsequently executed to each a deed for the lot purchased
by him.   The defendant's deed was registered on 13*th of
December*, 1890, and plaintiff's deed was registered *March*,
1891.   After the sale and before the defendant paid the
Sheriff, he, the defendant, was duly notified by plaintiff
that lot No. 37, bought by plaintiff, covered lot No. 38
"and that he could not hold."   It does not appear that the
Sheriff or either of the parties to this action had knowledge
of the lappage at the sale.   Upon these facts found by the
Court, by consent, His Honor held that plaintiff could not
recover and he took a non-suit and appealed.

So we have a clear-cut case of two innocent purchasers of
the same land on the same day, for value, and without any
notice, at the sale, of any defect of title or otehwise, with
the second purchaser's deed first probated and registered.
At common law and until recent legislation, the first pur-
chaser at a Sheriff's sale acquired the title, and his deed
when registered related to the day of sale, and the priority
of liens among the creditors did not affect his title.   *Wood-
ley* v. *Gilliam*, 67 N. C., 237; *Ricks* v. *Blount*, 4 Dev.,
128.   The proceeds of the sale were applied according to
the creditors' rights.   *Randall* v. *White*, 66 N. C., 102.
At an early day in our State history, registration laws in

many respects became necessary, and in *Leggett* v. *Bullock,* Busbee, 283, will be found a brief recital of all such Acts, until recently. The Act of 1829, Ch. 20, provided that "No mortgage or deed of trust shall be valid at law to pass any property as against creditors and purchasers for valuable consideration but from the registration of such mortgage or deed of trust." The words " at law " in said Act do not mean in a court of law only, but in all courts. "At law " is an expression in a statute which does not mean merely a legal tribunal as distinguished from an equitable jurisdiction, but, generally, our system of jurisprudence, whether legal or equitable.

This Act of 1829 has been now in force more than sixty years and has been well understood by lawyers and laymen, and was intended to uproot all secret liens, trusts, unregistered mortgages, &c., and under its force it has been held that no notice, however full and formal, will supply the place of registration. *Robinson* v. *Willoughby,* 70 N. C., 358 ; See *Code,* Sec. 1254, and the numerous cases there cited.

The present case turns on the construction of the Act of 1885, Ch. 147, which says, after repealing *The Code,* Sec. 1245, that : "No conveyance of land, nor contract to convey, or lease of land for more than three years, shall be valid to pass any property, as against creditors or purchasers for a valuable consideration from the donor, bargainor or lessor, but from the registration thereof within the County where the land lieth, &c. " It will be noted that the effective words of this Act are identical in substance with section 1254 of *The Code,* and we are driven to the conclusion that the legislature, with full knowledge of the meaning and effect of the said Act of 1829, intended to apply the same rule to all conveyances of land, as declared

in the late Act of 1885, Ch. 147, and we must give the same effect to it.

This view has been held and recognized by this Court in *Maddox* v. *Arp*, 114 N. C., 585; *Quinnerly* v. *Quinnerly*, 114 N. C., 145; *Allen* v. *Bolen*, Ibid, 560, and in *Barber* v. *Wadsworth*, 115 N. C., 29. In support of the above conclusion is the rule that when the equities are equal, the legal title controls. His Honor's intimation that the plaintiff could not recover was agreeable to law.

No Error.